UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Kitty Marie Freegard,

    Plaintiff,

    v.                                                         Civil No. 1:14-cv-34-jgm-jmc

Carolyn W. Colvin, Commissioner
of Social Security Administration,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 7, 12)

Plaintiff Kitty Marie Freegard brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the second decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Freegard's motion to reverse the Commissioner's decision (Doc. 7), and the Commissioner's motion to affirm the same (Doc. 12). For the reasons stated below, I recommend that Freegard's motion be GRANTED, in part; the Commissioner's motion be DENIED; and the matter be REMANDED for further proceedings and yet another decision.

## Background

Freegard was 33 years old on her alleged disability onset date of January 26, 2009. She attended high school through the tenth grade and has not completed a high school diploma program. She has worked as a school aide, a factory worker, a clerk, and a deli

worker/cook at a supermarket.  She is now 39 years old, and as of September 2012, was living in her parents' house with her husband and two teenage daughters.  (AR 681, 750.)

Since approximately December 2006 when she injured herself in a sledding accident, Freegard has had chronic back pain with associated muscle spasms.  In January 2007, she slipped on ice, further aggravating her back pain.  By June 2007, the pain appeared to have improved, but then in September of that year, she reinjured her back while lifting wood.  She continued working full time as a grocery store deli worker until early 2009, when she ended that job because she could no longer tolerate the pain.  Thereafter, she attempted more sedentary work though a vocational rehabilitation program, but was unable to do even that, finding that she could not sit for 30 minutes at a time without having "real bad pains."  (AR 35.)  Around this period (early 2009), Freegard began treating with Dr. Alicia Cunningham, an internal medicine specialist.  (AR 348.)  In October 2009, Dr. Cunningham stated that, since approximately January of that year, Freegard was able to sit for a total of only four hours in a workday and only if she was able to stand every hour.  (AR 393.)  In May 2010, Dr. Cunningham stated that Freegard could do a combination of sitting, standing, and walking for a total of only four hours in a workday.  (AR 395.)

Freegard has attempted to treat her back pain with physical therapy, occupational therapy, steroid injections, and prescription pain relievers, among other things.  Although these treatments have provided some relief, none has resolved her pain.  She testified that she has significant trouble sleeping, having to get up every 20 minutes or so because of muscle pain in her back.  (AR 481.)  She stated that once or twice each month she has to

2

have her daughter or husband carry her out of bed, and on occasion, her husband has to carry her to the bathroom. (AR 481–82.) She further testified that she cannot stand or walk for more than 10 minutes; she sometimes has difficulty getting into and out of chairs; she uses a cane to assist with walking; she does very little cooking or cleaning; she relies heavily on her husband and adult daughter for support with daily activities including household chores; she is severely limited in her ability to lift or carry items; she has great difficulty shopping by herself; and she can drive only very short distances. (AR 28–29, 36, 40, 476, 482–84.)

In 2009, Freegard filed applications for supplemental security income and disability insurance benefits. Therein, she alleges that, starting on January 26, 2009, she became unable to work as a result of back pain, fibromyalgia, a learning disability, and carpal tunnel syndrome. (AR 191.) Freegard claims that her back pain prevents her from being able to "get through a full day," and that she is unable to twist, turn, or lift; and stand or sit for longer than two or three hours. (*Id.*) She further claims that pain prevents her from being able to concentrate or focus. (*Id.*) The applications were denied initially and on reconsideration, and Freegard timely requested an administrative hearing. A hearing was conducted on July 19, 2010 by Administrative Law Judge ("ALJ") Thomas Merrill. On August 5, 2010, the ALJ issued a decision finding that Freegard was not disabled. (AR 7–15.) The Decision Review Board did not act on the claim within the required 90-day period, and the decision became final. Having exhausted her administrative remedies, Freegard filed a Complaint in this Court on January 12, 2011.

On September 20, 2011, the undersigned issued a Report and Recommendation ("R&R") recommending that the matter be remanded for a reassessment of the evidence and further development of the record.  (AR 525–46.)  Approximately one month later, after *de novo* review and absent objection, United States District Judge J. Garvan Murtha issued an Order adopting the R&R and remanding for the reasons stated therein.  (AR 524.)  Accordingly, on November 19, 2012, Freegard appeared for a second administrative hearing, again before ALJ Merrill.  (AR 469–99.)  On December 13, 2012, the ALJ issued another decision finding that Freegard was not disabled.  (AR 452–62.)  Thereafter, the Appeals Council denied Freegard's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 439–41.)  Having again exhausted her administrative remedies, Freegard filed the Complaint in this action on February 18, 2014.  (Doc. 4.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The

4

claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, in his most recent decision in this matter, ALJ Merrill first determined that Freegard had not engaged in substantial gainful activity since her alleged disability onset date of January 26, 2009. (AR 454.) At step two, the ALJ found that Freegard had the severe impairment of "chronic back pain of an unknown etiology." (*Id.*) Conversely, the ALJ found that Freegard's fibromyalgia, carpal tunnel

5

syndrome, and depression were non-severe. (AR 455.) At step three, the ALJ found that none of Freegard's impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) Next, the ALJ determined that Freegard had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except as follows:

> [S]he is limited to standing and walking 3 hours in an 8[-]hour workday and sitting for up to 6 hours total in an 8[-]hour workday with the ability to alternate sitting and standing at will; she has the unlimited use of her hands and feet to operate controls and to push and pull; and she can occasionally climb, balance, stoop, kneel, crouch[,] and crawl.

(AR 455–56.) Given this RFC, the ALJ found that Freegard was unable to perform her past relevant work as a cutter, a short-order cook, a cashier, a stock clerk, a cutter/packer, and a packager. (AR 461.) Based on testimony from the VE, however, the ALJ found that Freegard could perform other jobs existing in significant numbers in the national economy, including the jobs of addresser, fisher reel assembler, and answering operator. (AR 461–62.) The ALJ concluded that Freegard had not been under a disability from the alleged onset date of January 26, 2009 through the date of the decision. (AR 462.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## **Analysis**

Freegard makes four principal arguments: (1) the ALJ should have afforded more weight to the most recent opinions of treating physician Dr. Cunningham; (2) the ALJ's RFC determination is not supported by substantial evidence, as it "does not match the opinions of any physician in this matter" (Doc. 15 at 3); (3) the VE's testimony does not

7

constitute substantial evidence that Freegard is able to work because the hypothetical he relied on did not account for Freegard's limited education and included the requirement that Freegard "*periodically* alternate between sitting and standing" (AR 493 (emphasis added)), rather than the requirement assessed by the ALJ in his RFC determination that Freegard "alternate sitting and standing *at will*" (AR 456 (emphasis added)); and (4) the ALJ erred in evaluating Freegard's pain. For the following reasons, I find in favor of Freegard and recommend remanding yet again.

As noted above, this Court remanded Freegard's claim to the Commissioner three years ago, finding that the ALJ erred in his analysis of the opinions of treating physician Dr. Cunningham and nonexamining agency medical consultant Dr. Green.[1] (AR 524–46.) *See Freegard v. Astrue*, Civil Action No. 1:11–CV–12, 2011 WL 4915744, at *5-8 (D. Vt. Sept. 20, 2011), *Report and Recommendation aff'd by*, No. 1:11-cv-12-JGM, 2011 WL 4915740 (D. Vt. Oct. 17, 2011). Specifically, in a September 2011 R&R, the undersigned found as follows: (1) "the record does not support the ALJ's determination that Dr. Cunningham's October 2009 and May 2010 opinions are unsupported and inconsistent with the other evidence," *id.* at *5; and (2) "Dr. Cunningham had an extensive treating relationship with Freegard, whereas Green merely reviewed the records in existence at the time of his report and formulated an opinion based thereon," *id.* at *7. Despite the Court's 2011 Order, in the Commissioner's most recent decision in this matter, the ALJ once again found that Dr. Cunningham's October 2009 and May 2010

---

[1] It is unclear whether Dr. Green is in fact a medical doctor, as he refers to himself as merely "S. Green" in the record. (*See* AR 367.) For purposes of this R&R, and for the reasons argued in the Commissioner's motion (*see* Doc. 12 at 19 (citing AR 459)), I assume he is.

opinions are entitled to "little weight" because they are "not consistent with the evidence of record." (AR 459.) The ALJ's failure to follow the Court's Order with respect to the opinions of Dr. Cunningham and Dr. Green is, in and of itself, reversible error. *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."); *Brachtel v. Apfel*, 132 F.3d 417, 419–20 (8th Cir. 1997) ("The 'law of the case' doctrine . . . applies to administrative agencies on remand. Thus, if the District Court actually found that [the claimant] needed to lie down, the ALJ would be bound by that finding.") (citations and internal quotation marks omitted); *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1217 (C.D. Cal. 2005) ("ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court are the law of the case.") (emphasis omitted).

For the reasons stated in the 2011 R&R, *see Freegard*, 2011 WL 4915744, at *5-7, I once again recommend remanding, this time directing the ALJ to afford great weight to Dr. Cunningham's October 2009 and May 2010 opinions. I also recommend directing the ALJ to give great weight to Dr. Cunningham's most recent opinions, including her November 2012 Medical Statement wherein she attempted to explain the changes in Freegard's condition between October 2009 and May 2010.[2] (AR 753–54.) Specifically,

---

[2] Although this Court's 2011 R&R stated that the ALJ "should have attempted to contact Dr. Cunningham to inquire about the differences in her March 2009 and October 2009/May 2010 opinions, and specifically to explain in more detail her apparent opinion that Freegard's condition deteriorated between the time of her initial opinions and her later opinions" (AR 536), the ALJ does not appear to have attempted to recontact Dr. Cunningham on remand (*see* Doc. 7 at 14). The error is harmless, however, because Freegard herself contacted Dr. Cunningham and the Doctor consequently provided the more recent October and November 2012 opinions. (*See* AR 752–54.)

9

Dr. Cunningham stated that there was "[n]o significant change" in Freegard's condition during this period, and that Freegard could only do a combination of sit/stand/walk for 20 to 24 hours per week at those times (October 2009 and May 2010) as well as at the time she prepared the Statement (November 2012). (AR 754.) Dr. Cunningham explained as follows: "chronic low back pain waxes [and] wanes with repeat cycles over the years. My notes represent snapshots in time but it is my opinion that she can sit/walk/stand [for] between 20-24 hours per week on average." (*Id.*)

I further recommend directing the ALJ to give little weight to the opinions of nonexamining agency medical consultants Drs. Green and Knisely, again for the reasons stated in the 2011 R&R, *see Freegard*, 2011 WL 4915744, at *7–8: they are outdated and do not account for any evidence—including Dr. Cunningham's opinions—from after July and September 2009, respectively; they are not consistent with other substantial evidence including the more recent opinions and treatment notes of Dr. Cunningham; and the consultants never examined or met with Freegard. *See* 20 C.F.R. § 404.1527(d)(1); *Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir. 1986) ("opinions of nonexamining medical personnel cannot in themselves constitute substantial evidence overriding the opinions of examining physicians"); *Vargas v. Sullivan*, 898 F.2d 293, 295–96 (2d Cir. 1990) ("The general rule is that . . . reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.").

It is particularly noteworthy that there are no opinions or treatment notes from any examining provider which question or are inconsistent with Dr. Cunningham's opinions regarding Freegard's physical limitations. This is a case where there is little objective

10

medical evidence documenting the claimant's severe impairment: even Dr. Cunningham acknowledges that there are no MRIs, x-rays, or other such objective medical tests showing positive diagnostic findings reflecting Freegard's chronic back pain. Moreover, many examination results—including for example straight leg raising—are unremarkable and indicate full movement and strength. (*See* Doc. 12 at 15 (citing examination results).) This is often the nature of pain; it is not objectively measurable. Nonetheless, the Second Circuit has long held that "the claimed intensity of pain which results from [a severe] impairment shall not be discounted solely because (1) the nature of the medically determinable impairment does not 'objectively' cause the severity of pain alleged by the claimant; or (2) there exist no objective symptoms of pain of the intensity claimed by plaintiff (e.g. muscle spasms, atrophy, etc.)." *Alrdich v. Heckler*, No. 80–279, 1985 WL 71720, at *11 (D. Vt. June 25, 1985) (citing *Gallagher v. Schweiker*, 697 F.2d 82 (2d Cir. 1983) (noting that, although claimant's pain "need not be corroborated by objective medical findings, . . . some impairment [e.g., osteoporosis, arthritis] must be medically ascertained")).[3]

The ALJ's most recent decision places too much emphasis on the limited objective medical evidence contained in the record, stating: "no symptom or combination of

---

[3] *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) ("It has been established, both in this Circuit and elsewhere, that subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]") (listing cases); *Ber v. Celebrezze*, 332 F.2d 293, 299 (2d Cir. 1964) ("[E]ven pain unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable . . . impairment(s) that could reasonably be expected to produce the symptoms." (AR 456.) The ALJ did in fact determine that Freegard's back pain constituted a severe medically determinable impairment (AR 454), but found that the impairment was not so severe to produce the debilitating symptoms alleged by Freegard and supported by Dr. Cunningham's opinions. The Commissioner lists, in detail, evidence documenting Freegard's mostly normal examination findings, including normal muscle strength and reflexes. (*See* Doc. 12 at 8, 15.) But Freegard has not claimed that she is disabled due to a lack of muscle strength or reflexes; her claim is that she is unable to work due to chronic back pain which has resulted in a significantly limited ability to sit, stand, and walk. Tests of muscle strength and reflexes do not address those limitations.

In any event, the record does in fact contain at least minimal objective symptoms of Freegard's pain. Under the regulations, "objective medical evidence" includes "evidence of reduced joint motion [and] muscle spasm." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In September 2007 (prior to the alleged disability onset date), Dr. Mark Hoffman, Freegard's treating primary care physician at the time, stated in a treatment note: "[T]his is I think clearly a significant muscle dysfunction in her back." (AR 283.) And in a November 2008 treatment note, Dr. Hoffman recorded that Freegard had "diffuse muscle spasm that [he] could feel and see throughout [both sides of] her lower back . . . including the upper gluteus." (AR 276.) In another November 2008 treatment

note, Dr. Hoffman stated that Freegard had "obvious visual spasm on the right upper lumbar right down to the gluteus area, and she [wa]s tender in those same areas." (AR 275; *see also* AR 247, 294.) At that time, Freegard's back pain was not at a disabling level and she was able to continue working. But Dr. Hoffman's objective findings are nonetheless relevant to Freegard's pain symptoms generally. Moreover, treatment notes from Diane Bell, a nurse practitioner at Dr. Hoffman's office, which are from February 2009 (during the alleged disability period), indicate that Freegard had "decreased spinal range of motion, with pain with flexion, extension, and side-to-side twist." (AR 349.) And March 2011 physical therapy ("PT") notes similarly state that Freegard was unable to flex or extend her trunk "without extreme pain," and that she presented "with complaints of severe pain, muscle spasm, swelling, decreased [range of motion], strength, and functional mobility." (AR 686.) The PT notes record that Freegard had a "[s]everely antalgic [gait] with decreased cadence, slight forward bending, hip flexion, and extensive guarding of the trunk"; and that she had reduced lumbar lordosis, extensive atrophy of the back and leg muscles, and limited hip strength. (*Id.*) April 2011 PT notes indicate that Freegard was having back spasms on the left side. (AR 690.) Thus, there were at least some minimal objective signs of Freegard's pain.

    In sum, the ALJ has failed to follow the directives provided in the Court's 2011 Order and has not corrected the errors made in his original decision. Specifically, in his most recent decision, the ALJ has failed to provide "good reasons," as required by 20 C.F.R. § 404.1527(d)(2), for giving little weight to the opinions of treating physician Dr. Cunningham and great weight to the opinions of the nonexamining agency consultants.

13

The Second Circuit has stated: "We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). The ALJ has also erred in his consideration of Freegard's pain, failing to give proper credence to the associated symptoms reflected in the record. For these reasons, the matter should be remanded, once again, for further proceedings and a new decision. The Court need not address Freegard's remaining arguments regarding the ALJ's RFC determination and step-five findings made in reliance on the VE's testimony at the second administrative hearing, given that these issues will necessarily be affected by the ALJ's new analysis of the medical opinions and Freegard's pain.

Finally, Freegard requests that, instead of remanding for further proceedings, the Court should reverse and remand solely for payment of benefits. The Second Circuit has held that in some cases it is appropriate to remand for payment of benefits where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), and evidence of disability is "overwhelming," *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000). Where, however, "the administrative record contains gaps," and "further findings would so plainly help to assure the proper disposition of [the] claim," remand for further proceedings is more appropriate. *Butts*, 388 F.3d at 385. Here, evidence of Freegard's physical limitations is not so overwhelming that further proceedings would be pointless.

*See Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 2000) (holding remand for payment of benefits inappropriate because record failed to provide "persuasive evidence of total disability that rendered any further proceedings pointless").  Moreover, the Commissioner may wish to obtain further medical opinion evidence or vocational expert testimony on remand.  Thus, Freegard's request that the matter be reversed and remanded solely for payment of benefits should be denied.

## Conclusion

For these reasons, I recommend that Freegard's motion (Doc. 7) be GRANTED, in part; the Commissioner's motion (Doc. 12) be DENIED; and the matter be once again REMANDED for further proceedings and a new decision in accordance with this ruling.  Freegard asks that a different ALJ be assigned on remand (Doc. 7 at 11), but I recommend denying the request, as there is no indication that ALJ Merrill engaged in any conduct warranting remand to a different ALJ.  *See Johnson v. Astrue*, Civil No. 3:10-CV-1023 (VLB), 2011 WL 2938074, at *2 (D. Conn. Feb. 15, 2011) ("when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate").  For example, there is no evidence of bias, hostility, or prejudice by the ALJ towards Freegard.  *See Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 293 (E.D.N.Y. 2004) (remand to new ALJ justified where ALJ exhibited "personal hostility" towards plaintiff).  Nonetheless, the Commissioner retains discretion to make an assignment to a different ALJ on remand if she so chooses.  *See Johnson*, 2011 WL 2938074, at *2 (taking no position on which ALJ should be assigned to the case on remand, and noting that (a) there was "no evidence that the ALJ acted due

to apparent hostility toward Ms. Johnson"; and (b) "simply failing to adhere to the appropriate legal standard during the first hearing does not clearly indicate that the ALJ would not apply the correct standard on remand").

    Dated at Burlington, in the District of Vermont, this 23rd day of December, 2014.

                                            /s/ John M. Conroy  
                                            John M. Conroy  
                                            United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).